# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO LEE WILLIAMS, | 1:08-cv-01969 LJO GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| FRANCISCO JACQUEZ, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Madera, following his conviction by jury trial on June 2, 2005, of four counts of robbery (Cal. Penal Code § 211), one count of burglary (Cal. Penal Code § 459), and one count of participating in a criminal street gang (Cal. Penal Code § 186.22(a)). (LD[1] 1.) The jury also found true six sentence enhancements alleging that Petitioner was armed with a firearm during the offense (Cal. Penal Code § 12022.53(b)), and five enhancements alleging Petitioner committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang (Cal. Penal Code § 186.22(b)(1)(C)). (LD 1.) On

---

[1]"LD" refers to the documents lodged by Respondent with his answer.

1

1  August 2, 2005, Petitioner was sentenced to serve a determinate term of 50 years in state prison.
2  (LD 1.)
3   Petitioner filed a timely notice of appeal.  On May 4, 2007, the California Court of
4  Appeal, Fifth Appellate District (hereinafter "Fifth DCA") affirmed Petitioner's judgment in all
5  respects.  (LD 2.) He then filed a petition for review in the California Supreme Court on June 18,
6  2007. (LD 3.) The petition was dismissed on September 12, 2007. (LD 4.)
7   On December 13, 2007, Petitioner filed a petition for writ of habeas corpus in the
8  California Supreme Court, and the petition was denied on June 11, 2008. (LD 5.)
9   On December 29, 2008, Petitioner filed the instant federal habeas petition.  The petition
10  raises the following two (2) claims for relief: 1) He contends the criminal street gang
11  enhancement was not supported by sufficient evidence; and 2) He alleges the imposition of the
12  aggravated term based on facts not found by the jury was a violation of his Sixth and Fourteenth
13  Amendment rights. On January 6, 2010, Respondent filed an answer to the petition. Petitioner
14  did not file a traverse.

## STATEMENT OF FACTS[2]

On September 16, 2003, at approximately 10:00 p.m., Stanley Cantrell, Anna Del Bianco, Paulette Leonard, and Irma Ferrarese were in the bar of Farnesi's Restaurant in Chowchilla.  Three Black males wearing bandanas over their lower faces and carrying firearms strode into the bar through a side door. Ferrarese recognized Lee as one of the men.

The three men demanded the victims turn over all their money and valuables and then ordered the four people to lie down on the floor.  As soon as the robbers left by the side door, Leonard ran out the front door and saw a blue or gray compact car with four people in it pulling away.  Leonard jumped in her car and attempted to follow the [car] on southbound Highway 99.  She eventually lost sight of the compact car.  While Leonard was pursuing the robbers, someone in the restaurant reported the robbery to law enforcement.

Around 11:00 p.m. that same evening, Williams and Lee, along with a coparticipant, Brandon Crane, attempted ro rob a liquor store in Fresno.  The burglar alarm went off almost immediately, and the three men fled the scene.

Around 12:30 a.m. the morning of September 17, three armed men wearing bandanas robbed a pizza parlor in Fresno.  After the robbers left, the

---

[2]The Fifth DCA's summary of the facts in its May 4, 2007, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the Fifth DCA.

police were notified.

A citizen monitoring the police scanner saw a vehicle matching the reported description and notified the police.  A high speed chase ensued on northbound Highway 99, ending near Chowchilla where the suspects' car finally was stopped.  During the chase, the suspects had thrown various items out the car window.  Williams, Lee, and Crane were taken into custody at the scene.

Over the next day or two, various items were recovered in the car and along the chase route on Highway 99, including a blue knit cap, a blue bandanna, a blue Harley Davidson cap, a blue hooded sweatshirt, a Tec-9 assault rifle with ammunition, an empty nine-millimeter ammunition box, and personal property of the victims.

Williams and Lee were charged in Madera County with four counts of robbery, burglary, and membership in a street gang as a substantive offense.  In addition, it was alleged that the robberies and burglary were committed for the benefit of and at the direction of a criminal street gang.  As to all counts, it was alleged that Williams and Lee personally used a firearm.  It also was alleged that Lee suffered a prior serious felony conviction and served a prior prison term.  Williams was alleged to have served two prior prison terms.

At trial, Sergeant Thomas Trinidad of the Merced Police Department testified as an expert on gangs.  Trinidad described the initiation process for gang members, the significance of tattoos, hand signs, graffiti, and style of dress.  In the gang culture, committing property crimes is seen as supporting the gang financially, while committing violent crimes is seen as supporting the gang by generating fear of the gang among other gangs and the general public.  Violence also serves to deter victims from testifying.  Property crimes are committed to support the gang lifestyle because most gang members are unemployed.

Trinidad is familiar with a criminal street gang known as the Merced Gangster Crips.  The gang consists of 86 members or affiliates, uses the color blue as an identifying color, including the wearing of blue bandanas, and has robbery as one of its primary activities.

Based upon Lee's past admissions, his contacts with Merced police, and state parole records, Trinidad was of the opinion that Lee was a member of the Merced Gangster Crips.  Trinidad also testified that Williams was a member of the same gang, based upon gang photos, the "MGC" tattoo on Williams's arm, a chest tattoo reading "MG Crip gangster," and the moniker "Mr. Dice," which also was tattooed on Williams.

A hypothetical fact pattern, based upon the Farnesi's robbery, was posed to Trinidad.  He opined that each of the three perpetrators would receive a benefit from the crime, as well as the gang as a whole, and each perpetrator and the gang would receive a monetary benefit and an increase in status.  It was to the gang's benefit to have multiple gang members involved in the commission of a crime because it increased the chance of a successful outcome.  Since gang members tend to be unemployed, their main means of economic support is by committing crimes for profit.

Trinidad also testified that if gang members went together to a location for the purpose of committing a crime, it would tend to show the crime was committed for the benefit of, or at the direction of, the gang.  It also was significant, in Trinidad's opinion,

> that Lee, Williams, and Crane wore blue clothing and blue bandanas during the robbery.
>
> Additionally, Trinidad presented various court records establishing that the required predicate offenses had been committed by the Merced Gangster Crips.
>
> The jury found Williams and Lee guilty as charged of all substantive offenses and found the enhancements true. In a bifurcated trial on the prior conviction allegations, Lee admitted to one prior prison term and Williams admitted to two prior prison terms.

(LD 2: 2-5.)

## DISCUSSION

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Madera County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.  Standard of Review

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to

5

or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See <u>Lambert v. Blodgett</u>, 393 F.3d 943, 976-77 (2004).

Federal courts review the last reasoned state court opinion. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 979, 803 (1991). However, in cases where the state court decided an issue on the merits but provided no reasoned decision, federal courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

III. <u>Review of Claims</u>

    A. <u>Insufficiency of the Evidence</u>

Petitioner contends that there was insufficient evidence to support the jury's findings that he committed his enumerated offenses for the benefit of, at the direction of, or in association with a criminal street gang within the meaning of section 186.22(b)(1)(C).

Petitioner presented this claim on direct appeal to the Fifth DCA and California Supreme Court. Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal,

the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

In denying Petitioner's claim, the state appellate court reasoned, in part, as follows:

**Role of expert testimony**

The prosecution may rely on expert testimony to establish the required elements of the gang enhancement. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 322.) Expert testimony concerning the culture, habits, and psychology of a gang is permissible because these subjects are "'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' [Citation.]" (Evid. Code, § 801, subd. (a)); *People v. Gardeley* (1996) 14 Cal.4th 604, 617.) An individual's membership in a criminal street gang also is a matter beyond the common knowledge of jurors and thus a proper subject of expert testimony. (*People v. Gamez* (1991) 235 Cal.App.3d 957, 965, 286 Cal.Rptr. 894, disapproved on other grounds in *Gardeley*, at p. 624, fn. 10.) As stated in *People v. Valdez* (1997) 58 Cal.App.4th 494, "determining whether someone is involved [in a gang] and the level of involvement is not a simple matter and requires the accumulation of a wide variety of evidence over time and its evaluation by those familiar with gang urcana in light of pertinent criteria." (*Id*. at p. 507.)

Expert testimony is admissible to address the definition of a criminal street gang, the requisite primary activities and predicate offenses, and the gang's past criminal conduct and ongoing criminal nature. (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1463-1465.) Expert testimony also is admissible regarding the size, composition, or existence of a gang, an individual's membership in or association with a gang, gang-related tattoos, and gang-related clothing and indicia. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 656-657.)

Numerous cases have held that an expert may rely on hearsay in forming his or her opinion. (See *People v. Catlin, supra,* 26 Cal.4th at p. 137; *People v. Montiel* (1993) 5 Cal.4th 877, 918-919; *People v. Duran, supra,* 97 Cal.App.4th at p. 1463.) Expert testimony may be premised on material that is not admitted into evidence-or on material that is not ordinarily admissible, such as hearsay-as long as that material is reliable and of a type that is reasonably relied upon by experts in the particular field in forming their opinions. (*People v. Gardeley, supra,* 14 Cal.4th at p. 618.) An expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of his or her opinion. (*Ibid.*) "[A] gang expert may rely upon conversations with gang members, his or her personal investigations of gang-related crimes, and information obtained from colleagues and other law enforcement agencies. [Citations.]" (*Duran,* at p. 1463.)

**Gang purpose and intent**

Trinidad's opinion that Williams and Lee were gang members and committed the offenses for the benefit of the gang was based on law enforcement records, statements of Williams and Lee, statements of other members of the Merced Gangster Crips, the physical evidence of tattoos and clothing, and Trinidad's knowledge of gang culture, all matters on which expert testimony is appropriate. (*People v. Sengpadychith, supra,* 26 Cal.4th at p. 322.) Even if Trinidad relied in part on information or material that constitutes hearsay in forming his opinion, it is of the type that is reasonably relied upon by experts in the field and his reliance on the information is permissible. (*People v. Duran, supra,* 97 Cal.App.4th at pp. 1463-1465.)

Both Williams and Lee were members of the Merced Gangster Crips, drove together to Chowchilla, and committed the offenses together. There also was sufficient evidence that both wore blue bandanas and clothing. Trinidad opined in response to a hypothetical question that the use of blue bandanas and blue clothing during the commission of the offenses was a significant factor in identifying the crime as gang related and the perpetrators as having the intent to promote the gang. Trinidad also testified that robbery was one of the primary activities of the Merced Gangster Crips, and that the commission of robberies enhanced the status of the gang and gang members and provided a source of income for gang activities. Additionally, he noted that all of the perpetrators of the Farnesi robbery were members of the Merced Gangster Crips.

A gang expert may testify as to the motivation for a crime and whether the crime is committed for the benefit of a gang. (*People v. Zermeno* (1999) 21 Cal.4th 927, 930.) In response to a hypothetical question based upon the scenario surrounding the Farnesi robbery, Trinidad testified that, in his opinion, the offense was committed for the benefit of the gang, with the intent to promote the gang. The testimony of a single witness is sufficient for conviction. (*People v. Panah* 2005) 35 Cal.4th 395, 489.)

Williams and Lee rely on the cases of *People v. Killebrew, supra,* 103 Cal.App.4th 644 and *In re Frank S.* (2006) 141 Cal.App.4th 1192. They are distinguishable. In both *Killebrew* and *Frank S.* the experts testified regarding a specific, subjective intent harbored by a specific individual at a specific point in time, rather than in response to a hypothetical question that the perpetrators had the intent to promote the gang. Both cases acknowledge that it is appropriate for experts to testify on the issue of any gang motivation for a crime. (*Frank S.,* at p. 1197; *Killebrew,* at pp. 656-657.)

Williams and Lee also challenge the sufficiency of the evidence providing the factual support for Trinidad's opinions. They claim that there was conflicting evidence concerning the colors of the bandanas worn by and the general attire of the robbers. The presence of conflicting evidence is of no consequence to our review. The testimony of one witness can provide substantial evidence and is sufficient for conviction. Regardless of whether the evidence presented at trial is direct or circumstantial, conflicting or undisputed, the relevant inquiry on appeal remains whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Towler* (1982) 31 Cal.3d 105, 118.)

Here, the evidence was sufficient for a reasonable jury to have found that Williams and Lee committed the offenses for the benefit of a street gang with the intent to promote the gang.

(LD 2: 6-9.)

The law on insufficiency of the evidence claim is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

With regard to the sufficiency of the evidence to support a gang enhancement under section 186.22, the Ninth Circuit has recently held:

> California law requires the prosecutor to prove two things.  First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang."  Cal. Penal Code § 186.22(b)(1).  Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Id. We have previously recognized the importance of keeping these two requirements separate, and have emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone.

Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing Garcia v. Carey, 395 F.3d 1099, 1102-1103 & n.9 (9th Cir. 2005).  In Briceno, the gang expert testified in terms of "generalities" that the crimes could glorify the gang, but did not provide direct or circumstantial evidence regarding the defendant's specific intent.  Briceno, 555 F.3d at 1078.  In such circumstances, the Ninth Circuit held the expert testimony did not establish the petitioner's specific intent in committing the crimes.  Id. at 1078-1079.  This was particularly so in Briceno because the defendant submitted proof of a different motivation, i.e. personal gain.  However, in this instance, the gang expert offered circumstantial evidence in support of Petitioner's specific intent to commit the crimes for the benefit, at the direction of, or in association with the criminal street gang.  Both defendants were known members of the Merced Gangster Crips, drove in the same vehicle together to commit the crimes, wore blue bandanas and clothing reflective of the color associated with the Merced Crips during the crimes, and the robberies both enhanced the status of the gang and provided income to further gang activities.  Thus, Petitioner committed the crimes with a fellow gang member while both were wearing gang paraphernalia and colors, for

the specific purpose of obtaining funds to promote the gang. This was precisely the type of evidence lacking in Briceno as the Ninth Circuit specifically stated that "a jury could reasonably conclude that the defendant committed the crime with the specific intent to benefit the gang, as the defendant either committed the crime to protect gang "turf" or brandished gang signs or a gang moniker during the attack." Briceno, 555 F.3d at 1081. Accordingly, the state court's denial of this claim was not an unreasonable application of Jackson, and the claim should be denied.

B.     Imposition of Aggravated Term

Petitioner next alleges the sentencing court imposed an aggravated term on the basis of facts not found by a jury in violation of his Sixth and Fourteenth Amendment rights.

Petitioner also presented this claim on direct appeal to the Fifth DCA and California Supreme Court. Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3.

In rejecting this claim, the Fifth DCA stated:

> In *Blakely,* the United States Supreme Court held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt or admitted by the defendant. (*Blakely, supra,* 542 U.S. at pp. 301, 303.) Recently, in *Cunningham, supra,* 549 U.S. ---- [127 S.Ct. 856], the United States Supreme Court clarified that "In accord with *Blakely,* ... the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. [Citation.]" ( *Id.* at p. ---- [127 S.Ct. at p. 868].) An upper term constitutionally may be imposed if it is based upon facts admitted by the defendant, facts reflected in the jury's verdict, or a prior conviction. (*Blakely,* at p. 301.)
>
> Recidivism is a traditional basis for increasing a defendant's sentence. (*Almendarez-Torres v. United States* (1998) 523 U.S. 224, 243-244 (*Almendarez-Torres* ).) Recidivism factors do not relate to the current offense, but to criminal history. (*Ibid.*) Recidivism factors that may be found by a judge include prior convictions, prior prison terms, the number of convictions, and parole or probation status, as these pertain to a defendant's criminal history, not the current offense. (See *ibid.*)
>
> [. . . .]
>
> ***Williams's sentence***
>
> In imposing aggravated terms, the trial court noted that Williams had a history of violent conduct, as demonstrated by his prior convictions; his prior convictions were

numerous; the victims were elderly; and Williams's prior performance on probation or parole was unsatisfactory. Williams also admitted serving two prior prison terms.

In Williams's case, his poor performance on parole was not tied to his commission of the current offenses. Therefore, even if we excluded this factor and the age of the victims from consideration, the trial court constitutionally could rely upon Williams's criminal history to impose the upper term. Williams had suffered numerous prior convictions and had served prior prison terms before committing the current offenses. Again, one aggravating factor justifies an upper term. (*People v. Cruz, supra,* 38 Cal.App.4th at pp. 433-434.)

Additionally, when counsel inquired about imposing a sentence of less than the upper term, the trial court noted that the evidence in the case was "very strong." The trial court also indicated its disagreement with a plea agreement obtained for a third participant in the offenses in another court, stating the agreement "did shock the conscience" that the offender was treated so "leniently" in light of the evidence. Again, in light of these comments we conclude beyond a reasonable doubt that the trial court would not have imposed a lesser sentence if it were found that some factors could not constitutionally be relied upon. (*People v. Price, supra,* 1 Cal.4th at p. 492.)

(LD 2: 9,11.)

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (emphasis added), the Supreme Court held that *"[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." This holding, including the exception for a defendant's criminal history, has been upheld by the Supreme Court in several subsequent cases. See James v. United States, 550 U.S. 192, 214 n.8 (2007); Cunningham v. California, 549 U.S. 270, 274-75 (2007); United States v. Booker, 543 U.S. 220, 230-31 (2005); Blakely v. Washington, 542 U.S. 296, 301 (2004). In Cunningham, the Supreme Court held that the middle term in California's sentencing scheme is the statutory maximum. 549 U.S. at 288. Nevertheless, the criminal history exception was retained. Id. at 275 ("[T]he Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, *other than a prior conviction*, not found by a jury or admitted by the defendant.") (emphasis added).

In this case, the state court specifically relied on Supreme Court precedent in rejecting Petitioner's claim. The Fifth DCA noted that, in determining Petitioner's sentence and imposing the upper term, the sentencing court relied on the fact that Petitioner had sustained multiple prior convictions and had admitted to serving two prior prison terms. By relying on Petitioner's history

of recidivism, the sentencing court's imposition of the upper term did not violate his Sixth Amendment rights. See Almendarez-Torres v. United States, 523 U.S. 224, 247 (1998); Apprendi, 530 U.S. at 490.  Further, as Respondent correctly argues, any of the other factors utilized by the sentencing court in selecting the upper term is irrelevant to Sixth Amendment analysis. As stated by the Ninth Circuit,

> if at least one of the aggravating factors on which the judge relied in sentencing [the petitioner] was established in a manner consistent with the Sixth Amendment, [the petitioner's] sentence does not violate the Constitution. Any additional factfinding was relevant only to selection of a sentence within the statutory range.

Butler v. Curry, 528 F.3d 624, 643 (9th Cir.2008).

Therefore, the state court rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court. The claim should be denied.

## RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas corpus be DENIED. It is FURTHER RECOMMENDED that the Clerk of Court be DIRECTED to enter judgment.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after date of service of the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 14, 2010**           **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE